UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD BOWDEN,

                         Plaintiff,

           v.

CITY OF BUFFALO, et al.,

                         Defendants.

_____

DECISION & ORDER and
REPORT & RECOMMENDATION

15-CV-6565W

         Plaintiff Richard Bowden ("Bowden") filed this action against the City of Buffalo ("City") and its police officers Michael J. Acquino ("Acquino") and Mark Hamilton ("Hamilton") (collectively, "City Defendants") and against three Jane Doe Defendants who worked at the Erie County Holding Center ("ECHC"), asserting claims under 42 U.S.C. § 1983 arising out of his arrest on September 21, 2012, and the medical care he received during his subsequent incarceration. (Docket # 1). Bowden also sued the Erie County Medical Center ("ECMC"), but those claims were dismissed. (Docket # 3). Defendant Janet Collesano ("Collesano") was identified as Jane Doe 1, substituted as a defendant, and served with a copy of the complaint, and, on April 13, 2016, she answered the complaint and asserted cross-claims. (Docket ## 3, 5, 11, 14).

         Currently pending before the Court is plaintiff's motion for leave to file an amended complaint. (Docket ## 32, 36). Bowden seeks to add as defendants Mathew J. Brown ("Brown"), MD, and Charles Tirone ("Tirone"), MD, physicians who worked at ECMC, and

Timothy B. Howard ("Howard"), the Erie County Sheriff.[1]  (*Id.*).  He seeks to substitute the City of Buffalo Police Department (the "Police Department") as a defendant in place of the City of Buffalo (the "City").[2]  (*Id.*).  Bowden's proposed amended complaint also seeks to assert a new claim against Hamilton and Acquino that they conspired, and coerced others, to violate his constitutional rights.  (Docket # 32 at ¶¶ 3-5, 9-10).

The City Defendants oppose Bowden's motion on the grounds that it is untimely.  (Docket # 53-3 at 2-6).  The City also maintains that any attempt to substitute the Police Department as a defendant would be futile because the Police Department lacks the capacity to be sued.  (*Id.* at 7).  In addition, the City Defendants contend that Bowden has failed to state a claim for municipal liability against the City and that the conspiracy allegations against Hamilton and Acquino are improperly vague.  (*Id.* at 8-9).  Finally, the City Defendants maintain that any purported state law claims are barred by Bowden's failure to comply with the requirements of New York General Municipal Law § 50.  (*Id.* at 9).

Collesano opposes the motion to amend and has cross-moved for judgment on the pleadings on the grounds that the claims alleged against her in the original and proposed amended complaint are futile and that Bowden has failed to exhaust his administrative remedies.  (Docket ## 49, 50, 51, 52).  She also requests a stay of discovery pending resolution of these motions or an extension of the scheduling order.  (Docket ## 49, 50, 51, 52, 66, 67).  Howard

---

[1]  For ease of reference, the Court refers to Collesano and Howard collectively as the "County Defendants," although the Court acknowledges that these motions raise the question whether they are proper parties.

[2]  The record on these motions does not make clear whether Bowden originally sought leave to substitute the Police Department in place of the City and, if so, whether he persists in that application.  Although his original motion papers identified the Police Department as a putative defendant, his reply papers state that the *Monell* (*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978)) claim is asserted "against the 'City of Buffalo,' [and] [t]he [P]olice [D]epartment is the Agency of City Government in which the infractions complained of here have occurred."  (Docket # 58 at 12).  Even assuming Bowden seeks that relief, I find that it should be denied for the reasons explained *infra*.

likewise opposes the motion to add him as a defendant on the grounds that any claims against him are futile and that Bowden failed to exhaust his administrative remedies.  (Docket ## 46, 47, 48).

For the reasons discussed below, I grant that portion of Bowden's motion to amend that seeks to add Brown and Tirone as defendants to this action.  I further recommend that the remaining portions of Bowden's motion to amend be denied and that Collesano's cross-motion for judgment on the pleadings be granted.  In light of my recommendation, Collesano's requests for a stay of discovery or extension of the scheduling order deadlines should be denied as moot.

## FACTUAL BACKGROUND

### A.     The Original Complaint

Bowden commenced this action on September 11, 2015, asserting claims arising from events that occurred between September 21, 2012 and September 26, 2012.  (Docket # 1).  According to the complaint, on September 21, 2012, as he was standing on a sidewalk talking to an acquaintance, Bowden was approached and questioned by Acquino and Hamilton.  (*Id.* at ¶¶ 11-13).  Bowden alleges that the officers' proffered reason for questioning him was a pretext to harass him.  (*Id.* at ¶¶ 13, 24).  Bowden fled the scene, discarding an illegal handgun from his pocket as he ran.  (*Id.* at ¶¶ 17-18).  Acquino tackled Bowden to the ground.  (*Id.* at ¶ 19).  According to Bowden, after he was on the ground and non-resistant, Acquino and Hamilton assaulted him, breaking his arm in two places, and causing swelling to his face, bruising to his body, and scarring.  (*Id.* at ¶¶ 20-22).  Bowden maintains that the Buffalo Police Department was under investigation for "improper tactics and brutality" at the time of the incident.  (*Id.* at ¶ 39).

Bowden alleges that he was transported to ECMC where a doctor determined that he required immediate surgery to repair his arm. (*Id.* at ¶ 25). Despite the diagnosis, Bowden claims, the doctor failed to refer him for immediate surgery. (*Id.*). Instead, Bowden's arm was set using a piece of plastic and an ace bandage, and he was prescribed medication that was ineffective to relieve his pain. (*Id.* at ¶¶ 26-29). Acquino and Hamilton then transferred Bowden to ECHC. (*Id.* at ¶ 30).

According to Bowden, he received treatment from Jane Does 2 and 3 over the course of the following five days. (*Id.* at ¶¶ 34-35). Bowden asserts that he complained to these nurses that the pain medication they administered failed to relieve his pain and caused hazardous side effects. (*Id.*). According to Bowden, Jane Doe 3 informed him that the combination of medication he had been prescribed was improper, although Bowden continued to receive the same medication. (*Id.*).

On his third day at ECHC, Bowden received treatment from Collesano, who supervised patient care at ECHC. (*Id.* at ¶ 32). Bowden alleges that she informed him that he needed immediate surgery and would request it, but the surgery was not provided for another two days. (*Id.*). According to Bowden, Collesano also told him that the "semi-cast" he had received at ECMC was insufficient to address his injuries and that he should not have been released from ECMC in his condition. (*Id.* at ¶ 33). Bowden attached to his original complaint photographs of an arm (presumably his) and several imaging reports dated September 21 and 26, 2012. (*Id.* at 16-19).

Bowden alleges that he was told by ECHC staff and nurses that in order to make an official complaint about his treatment, he needed to write to the "Head Nurse." (*Id.* at ¶¶ 8, 36). According to Bowden, he was told that there was no other grievance process. (*Id.*).

4

Bowden alleges that he wrote a letter addressed to the head nurse, but did not receive a reply. (*Id.*).

His original complaint asserts causes of action against the City for failure to train its officers, against Acquino and Hamilton for excessive force, and against Collesano and Jane Does 2, and 3 for deliberate indifference.  (Docket # 1).  A claim for deliberate indifference against ECMC was dismissed by United States District Judge Elizabeth A. Wolford.  (Docket ## 1, 3).  On November 20, 2015, the Court directed the Erie County Attorney to identify the Jane Doe Defendants.  (Docket # 3).  On January 29, 2016, the County identified Jane Doe 1 as Janet Collesano, an independently contracted nurse practitioner who provided healthcare services at ECHC.  (Docket # 5).  The Assistant County Attorney represented that, despite reasonable inquiry, he was unable to identify Jane Does 2 and 3.  (*Id.*).

**B.** **Discovery and Plaintiff's Motion to Amend**

A Rule 16 conference was conducted on June 7, 2016, after which this Court issued a scheduling order setting a deadline of March 31, 2016, for filing motions to amend. (Docket # 17).  At Bowden's request, the deadline was extended until May 30, 2016.  (Docket # 28).  On May 25, 2016, Bowden mailed a proposed amended complaint, along with a letter to this Court explaining that he was submitting the amended complaint in accordance with the Court's scheduling order.  (Docket # 32).  The letter noted that he was seeking to add three defendants to the litigation, and he requested that the United States Marshals Service be directed to serve the complaint on the newly-named defendants.  (*Id.* at 13).  Counsel for the defendants objected to the proposed amended complaint on the grounds that Bowden had not filed a motion seeking leave to file and serve the amended pleading.  (Docket ## 46-2; 53-1).

On June 5, 2016,[3] Bowden filed the pending motion to amend the complaint. (Docket # 36).  Bowden seeks to assert claims against Tirone and Brown, two doctors who allegedly provided him treatment while he was at ECMC.  (*Id.* at ¶ 11).  Bowden alleges that he was unable to identify Tirone and Brown until he received copies of his medical records through discovery in this litigation.  (*Id.* at ¶¶ 11-12).

Bowden also seeks to add Howard as a party defendant.  (Docket # 32 at 2).  The proposed amended complaint alleges that Howard promulgated a policy requiring inmates to "follow the medical protocol of the [n]urse [p]rovider[s] or . . . [be] classified as refusing treatment."  (*Id.* at ¶ 14).  Bowden maintains that he suffered pain and delayed treatment as a result of this policy because the nurse practitioners who treated him denied him access to a doctor and failed to provide him with appropriate medication.  (*Id.* at ¶ 18).

With respect to the City Defendants, Bowden observes that his original complaint stated a claim for municipal liability against the City, the district court screened that claim pursuant to 28 U.S.C. § 1915(a) and permitted it to proceed, and the same claim continues to be asserted in his proposed complaint.  (Docket # 58 at 4-5, 12).  Bowden maintains that he is entitled to discovery on it.  (*Id.* at 12).  As to his proposed conspiracy claim against Acquino and Hamilton, he alleges that discovery uncovered the facts underlying and supporting that claim.  (*Id.* at 6).

**DISCUSSION**

Rule 15(a) of the Federal Rules of Civil Procedure provides that once the time for amending a pleading as of right has expired, a party may request leave of the court to amend,

---

[3] The enclosure letter accompanying the motion is dated June 5, 2016, although the motion was not electronically docketed by the Clerk's Office until June 7, 2016.  (Docket # 36-2).

which shall be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a). If the underlying facts or circumstances relied upon by the party seeking leave to amend may be a proper subject of relief, the party should be afforded the opportunity to test the claim on its merits. *See United States ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 889 F.2d 1248, 1254 (2d Cir. 1989). "In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962).

While the court retains discretion to grant or deny leave to amend under Rule 15(a), "[the] outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.* at 182; *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *Evans v. Syracuse City Sch. Dist.*, 704 F.2d 44, 46 (2d Cir. 1983).

Despite the ordinarily lenient standard imposed, if the amendment proposed by the moving party is futile, "it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d at 131. "An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."[4] *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (citing *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002)). Rule 8(a) of the Federal Rules of Civil Procedure requires that the complaint contain "a short and plain statement of the

---

[4] Collesano has also cross-moved for dismissal pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket # 49). Dismissal under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 is to give the defendant fair notice of the claim plaintiff is asserting and the factual basis for the claim. *Erickson v. Pardus*, 551 U.S. 89, 93 (2007). To avoid dismissal, the proposed amended claim must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The *Twombly* "plausibility standard" applies to complaints brought by *pro se*, as well as represented, plaintiffs. *Sowell v. Chappius*, 695 F. Supp. 2d 16, 18 (W.D.N.Y. 2010). "[A]ll pleadings, *pro se* or otherwise, must contain enough factual allegations to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* (omission in original) (quoting *Boykin v. KeyCorp*, 521 F.3d 202, 214 (2d Cir. 2008)). That said, "[a] document filed *pro se* is 'to be liberally construed' and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers,'" *Erickson v. Pardus*, 551 U.S. at 94 (internal citation omitted), although they still must comply with the pleading requirements of the Federal Rules of Civil Procedure, *White v. Drake*, 2011 WL 4478921, *6 (N.D.N.Y. 2011). "A court must make reasonable allowances so that a *pro se* plaintiff does not forfeit rights due to [his] lack of legal training." *Forbes v. State Univ. of New York at Stony Brook*, 259 F. Supp. 2d 227, 232 (E.D.N.Y. 2003). Thus, a court must construe *pro se* pleadings liberally and "interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

A.     <u>**Claims Against Brown and Tirone**</u>

As stated above, Bowden seeks to assert claims against Brown and Tirone for deliberate indifference to his medical needs. (Docket # 32 at 1, 4-5 at ¶¶ 7-10). Bowden urges that the addition of these defendants will correct the mistake he made in his original complaint of asserting claims against ECMC instead of the individual doctors. (Docket ## 36 at ¶¶ 11-12; 58 at 6-7). He explains that he was able to identify Brown and Tirone after receiving copies of his medical records through discovery. (*Id.*). None of the current defendants oppose this portion of Bowden's motion, and I discern no reason to deny Bowden's application. *See Orelvis v. State of New York Dep't of Corr. Servs.*, 2007 WL 5658934, *3 (W.D.N.Y. 2007) (granting leave to amend to add subsequently-identified doctor as defendant). Accordingly, Bowden's motion to name Brown and Tirone as defendants and add deliberate indifference claims against them is granted.[5]

B.     <u>**Claims Against County Defendants**</u>

1.     <u>**Extrinsic Materials**</u>

In support of their opposition to the motion to amend and Collesano's motion for judgment on the pleadings, the County Defendants have submitted several factual affidavits and exhibits. (*See*, *e.g.*, Docket ## 46-1, 46-4, 46-5, 47, 47-1, 47-2, 47-3, 51, 61, 63). Additionally, their papers repeatedly cite documents produced as part of Collesano's Rule 26 disclosures and raise various factual issues more properly addressed in a summary judgment motion, rather than

---

[5]  Because Bowden seeks to add these new defendants, his proposed amended complaint must also be evaluated under Rule 20(a) of the Federal Rules of Civil Procedure, which governs joinder of additional parties. Fed. R. Civ. P. 20(a). The current defendants have not opposed the addition of Brown and Tirone under Rule 20(a), and I find that it is also proper under Rule 20(a).

on the pending motions assessing the adequacy of the pleadings.[6]  Despite acknowledging that

they are bound by the pleadings at this stage, the County Defendants nonetheless maintain that

they are entitled to rely upon these extrinsic materials because Bowden, a *pro se* plaintiff,

attached several exhibits to his complaint and motion papers or otherwise referred to documents

in his complaint.  (*See*, *e.g.*, Docket ## 46 at ¶ 4; 48 at 2; 50 at ¶ 4(f) & n.3; 51 at ¶ 3).

        In adjudicating a motion addressed to the adequacy of the pleadings, a court is

generally limited to considering:  "(1) the facts alleged on the face of the complaint;

(2) documents attached to the complaint as exhibits; (3) documents incorporated in the complaint

by reference; and (4) matters of which the court may take judicial notice."  *Acquest Holdings,*

*Inc. v. Travelers Cas. & Sur. Co. of Am.*, 217 F. Supp. 3d 678, 683 (W.D.N.Y. 2016).  Further, a

court may appropriately consider factual allegations made by a *pro se* party in their motion

papers or the documents they attach to those papers.  *See Walker v. Schult*, 717 F.3d 119, 122 n.1

(2d Cir. 2013) ("[a] district court deciding a motion to dismiss may consider factual allegations

made by a *pro se* party in his papers opposing the motion"); *Turner v. Procopio*, 2016 WL

7186488, *3 (W.D.N.Y. 2016) ("[i]n deciding a motion to dismiss a *pro se* complaint, . . . the

court may consider materials outside the complaint, documents submitted with the plaintiff's

opposition papers, allegations contained in the plaintiff's memorandum of law, and affidavits as

long as those items are consistent with the allegations in the complaint"); *Martinez v.*

*Aycock-West,* 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) ("in deciding a motion to dismiss a pro

se complaint, it is appropriate to consider materials outside the complaint to the extent that they

are consistent with the allegations in the complaint, . . . including documents that a pro se litigant

---

[6]  In making this observation, the Court does not imply that the issues raised by the County Defendants are in fact ripe for summary resolution; rather, the Court simply observes that the factual contentions are inappropriately raised on motions directed towards the facial adequacy of the pleadings.

attaches to his opposition papers") (internal citations and quotations omitted); *Ceara v. Deacon*, 68 F. Supp. 3d 402, 405 (S.D.N.Y. 2014). Despite the County Defendants' assertions to the contrary,[7] the fact that Bowden attached exhibits to his complaint and motion papers does not give them complete license to rely upon any document or factual assertion outside the pleadings; they have not moved for summary judgment, and this Court declines to exercise its discretion to convert their dismissal motion into one.[8] Although a court has discretion under certain circumstances to consider some materials not explicitly referenced in the plaintiff's submission, *see Liu v. New York State Dep't of Health*, 2017 WL 3393944, *4 (S.D.N.Y. 2017) (considering plaintiff's medical records in assessing defendant's motion to dismiss where plaintiff heavily relied upon medical records in the amended complaint), I find, based upon my review of the

---

[7]  For example, Collesano maintains that because Bowden's allegations and exhibits have placed the medical care that she provided to him at issue in the litigation, she should be permitted "to include such factual averments or docket items or exhibits, as pertain to my care, treatment and/or diagnosis of [Bowden] . . . in support of my within cross-motion." (Docket # 51 at ¶ 3).

[8]  Relying heavily on affidavits and exhibits extrinsic to the pleadings, including a document allegedly signed by Bowden acknowledging receipt of the Inmate Handbook containing the grievance procedures for ECHC, the County Defendants maintain that the claims against them are futile because Bowden failed to exhaust his administrative remedies. (Docket ## 29-1; 46 at ¶¶ 58-62; 47; 50 at ¶¶ 49-55; 52 at 20-24; 63; 65). In contrast, Bowden contends that he satisfied any exhaustion requirement or, alternatively, that the grievance process was not available to him. In both his original complaint, and his proposed amended complaint, Bowden alleged that he was denied access to any grievance procedure and that he was informed that his only recourse was to write a letter to the "head nurse," which he did. (Docket ## 1 at ¶ 36; 32 at ¶ 20). He also maintains that he submitted a formal grievance to Howard prior to filing his proposed amended complaint. (Docket # 32 at ¶ 20). Finally, he contends that the Inmate Handbook "was not made available to [him]" in September 2012. (Docket # 58 at 6).

       Failure to exhaust is an affirmative defense; therefore, "[d]ismissal under Rule 12(b)(6) for failure to exhaust is . . . appropriate only where nonexhaustion is apparent from the face of the complaint." *Villafane v. Sposato*, 2017 WL 4179855, *10 (E.D.N.Y.) (collecting cases), *report and recommendation adopted*, 2017 WL 4157220 (E.D.N.Y. 2017). Given the parties conflicting assertions, it appears that factual disputes exist that preclude resolution of this issue at this stage. *See id.* at *12 ("[p]laintiff's allegations raise questions that cannot be answered at this stage with an undeveloped record[;] . . . the [c]ourt finds that dismissal on the grounds of non-exhaustion is inappropriate at this time"); *Henry v. Liberty*, 2016 WL 5462825, *2 (N.D.N.Y. 2016) ("[w]here, as here, a plaintiff claims that the grievance process was unavailable to him, . . . it would be improper to grant [d]efendants' motion to dismiss"); *James v. Mosko*, 2016 WL 8671478, *4-5 (W.D.N.Y. 2016) (denying motion for dismissal or summary judgment on non-exhaustion grounds as premature where "defendants' exhaustion defense primarily relies on evidence outside the four corners of the [complaint] – in particular, testimony and documentation submitted by . . . a DOCCS official with access to the grievance records"), *report and recommendation adopted*, 2017 WL 397474 (W.D.N.Y. 2017).

parties' submissions, that reliance upon the extrinsic materials cited by defendants would not alter my determination. Accordingly, this Court will not consider the affidavits submitted by the County Defendants or any documents attached as exhibits to their papers unless those documents are explicitly relied upon by Bowden in his complaint or submissions.

### 2. <u>Claims Against Collesano</u>

Construed liberally, Bowden's original complaint alleged that Collesano was responsible for supervising patient care at ECHC, but failed to monitor his condition or treatment during his first three days at ECHC. (Docket # 1 at ¶¶ 32-33). When she finally examined him, Collesano informed him that he had received improper care at ECMC and she would request that he receive immediate surgery. (*Id.*). According to Bowden, he did not receive surgery until two days later. (*Id.*). Bowden claimed that Collesano, who was responsible for supervising patient care, was deliberately indifferent to his needs during the five days that he was at ECHC because she failed to ensure that he had proper medication and timely surgery. (*Id.* at 12 (Fifth Claim)).

In his amended complaint, Bowden alleges that after Jane Does 2 and 3 failed to heed his complaints concerning inadequate pain medication, the painful side effects from his prescribed medication, and the need to be evaluated by a doctor, he wrote to Collesano and requested an evaluation by a physician. (Docket # 32 at ¶ 12). Bowden alleges that Collesano failed to "timely remedy" his complaints, causing him to suffer "extreme pain and excruciating suffering" for several days prior to undergoing surgery. (*Id.* at ¶ 19). Attached to his moving papers is a "Consult Form" signed by Collesano, dated September 25, 2012. (Docket # 36 at 21). The form was directed to ECMC and requested an appointment "ASAP" with Dr. Rohrbacher to evaluate Bowden's left arm fracture. (*Id.*). Also attached to Bowden's original complaint, and

12

his motion papers, is an imaging report of an x-ray of his left arm ordered by Dr. Rohrbacher, dated September 26, 2012.  (Docket ## 1 at 19; 36 at 22).

In his reply papers, Bowden suggests that Collesano must have received his letter of complaint because she responded to it by taking "corrective action."  (Docket # 58 at 4, 5 n.1, 7 n.3).  Bowden acknowledges that the crux of his deliberate indifference claim is the alleged failure of Jane Does 2 and 3 to provide him an emergency medical sick-call between September 22 and 24, despite his repeated requests and complaints.  (*Id.*).  Indeed, Bowden represents that defendants' counsel "avoids this component of [his] claim by providing Collesano's actions Sept. 25 - Oct. 3, 2012, where corrective action was employed."  (*Id.* at 5 n.1).

Collesano opposes Bowden's motion to amend the complaint and cross-moves for judgment on the pleadings on the grounds that Bowden has failed to sufficiently allege a claim for deliberate indifference against her.  (Docket ## 49; 50 at ¶¶ 37-48, 56-58; 51; 52 at 9-20; 61; 64 at 5-10).  According to Collesano, Bowden has failed to allege that Collesano was personally involved in any delay of medical treatment.  (*Id.*).  Collesano contends that Bowden has not alleged that he ever complained to her or that she was otherwise aware of his condition and deliberately disregarded it.  (*Id.*).  She further argues that, in any event, any delay in treatment that is arguably attributable to Collesano was *de minimis*.[9]  (Docket # 52 at 16).

Bowden's claims are based upon events that occurred while he was detained in an apparent pretrial capacity.[10]  Thus, his claims of deliberate indifference are governed by the

---

[9]  Relying upon extrinsic materials, Collesano also maintains that there was no delay in treatment because Bowden was evaluated by Rohrbacher within one week of his original discharge from ECMC, as recommended by the discharging physician.  (Docket ## 52 at 15; 64 at 7 (citing Docket # 21-5 at 29)).  Because this argument relies upon materials not considered on this motion to dismiss, the Court does not address it.

[10]  To the extent that Bowden's claims concern events occurring after his arrest but prior to arraignment, the Fourth Amendment's objective reasonableness standard may govern.  *Compare Shakir v. Derby Police Dep't*, 2018 WL 306700, *26-28 & n.29 (D. Conn. 2018) ("[g]iven the lack of clear direction from the Circuit in these cases, the court follows instead the line drawn by the Circuit in *Powell* and applies the Fourth Amendment to Shakir's claim

Fourteenth Amendment, rather than the Eighth Amendment, which governs claims made by convicted prisoners. *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). Under either provision, a plaintiff must satisfy two prongs to establish a claim for deliberate indifference. *See id.*; *Feliciano v. Anderson*, 2017 WL 1189747, *8 (S.D.N.Y. 2017) ("[r]egardless of whether a deliberate indifference claim is brought by a convicted prisoner under the Eighth Amendment or by a pretrial detainee under the Fourteenth Amendment, the plaintiff must satisfy a two-prong test"). First, plaintiff must allege that he suffered from a sufficiently serious medical condition. *Feliciano v. Anderson*, 2017 WL 1189747 at *8. Second, the plaintiff must allege that the defendant was deliberately indifferent to his medical condition. *Id.*; *Bruno v. City of Schenectady*, 2018 WL 1357377, *2 (2d Cir. 2018) (summary order) (to state a deliberate indifference claim, "plaintiff must plead facts 'show[ing] that [he] had a serious medical condition and that it was met with deliberate indifference'") (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)).

   With respect to the first prong, the legal standard is the same under the Fourteenth Amendment as under the Eighth Amendment. *See Cuffee v. City of New York*, 2017 WL 1134768, *5 (S.D.N.Y. 2017) ("[w]ith respect to the objective component, the legal standard is the same under both the Eighth and the Fourteenth Amendments"). "A medical need is 'serious' for constitutional purposes if it presents 'a condition of urgency' that may result in 'degeneration' or 'extreme pain.'" *Sowell v. Chappius*, 695 F. Supp. 2d at 20 (quoting *Chance v.*

---

regarding his conditions of pre-arraignment confinement") *with Goodwin v. Kennedy*, 2015 WL 1040663, *10 (E.D.N.Y. 2015) ("[i]n the absence of authority from the Second Circuit extending its reasoning in *Powell* to denial of medical care claims, the Court is persuaded that [p]laintiff's claim should be analyzed under the Fourteenth Amendment rather than the Fourth Amendment"). Bowden alleges that Collesano first treated him on his third day of confinement, and the parties' submissions rely upon the deliberate indifference standard. (Docket ## 32 at ¶ 25; 36 at ¶ 15; 52 at 9-20; 58 at 10-11). Considering the timing of Collesano's involvement and the parties' application of the deliberate indifference standard, it is reasonable to assume that Bowden had been formally charged and was a pretrial detainee at the time his potential claims against Collesano arose. Accordingly, I have analyzed the claim under the Fourteenth Amendment.

*Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998)).  The objective inquiry is highly fact-specific, and factors to consider include "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment'; (2) whether the medical condition significantly affects daily activities; and (3) the existence of chronic and substantial pain." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003).

    When the allegations involve a delay or interruption in the provision of medical treatment, "the seriousness inquiry is 'narrower,' . . . and focuses on the particular risk of harm that resulted from the delay or interruption in treatment rather than the severity of the prisoner's underlying medical condition." *Hamm v. Hatcher*, 2013 WL 71770, *8 (S.D.N.Y. 2013) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 279-80 (2d Cir. 2006)).  Under such circumstances, "it's the particular risk of harm faced by the prisoner due to the challenged deprivation of care, rather than the severity of the prisoner's underlying medical condition, considered in the abstract that is relevant for Eighth Amendment purposes." *Smith v. Carpenter*, 316 F.3d 178, 186 (2d Cir. 2003).  The proper inquiry is whether the delay itself was sufficiently harmful to constitute a constitutional violation.  *Frank v. Cty. of Ontario*, 884 F. Supp. 2d 11, 19 (W.D.N.Y. 2012); *see Ferguson v. Cai*, 2012 WL 2865474, *4 (S.D.N.Y. 2012) ("[w]here a claim concerns the temporary delay or interruption in the provision of medical treatment[,]. . . then the focus shifts to the particular risk of harm faced by a prisoner due to the challenged *deprivation of care*, rather than the prisoner's underlying medical conditions in the abstract") (internal quotation omitted).  In evaluating the seriousness of the delay in treatment, "a court may consider the 'absence of adverse medical effects or demonstrable physical injury' associated with such delay or interruption." *O'Connor v. McArdle*, 2006 WL 436091, *8-9 (N.D.N.Y. 2006) (quoting *Smith v. Carpenter*, 316 F.3d at 187), *aff'd*, 217 F. App'x 81 (2d Cir. 2007).

"[A] delay in medical care does not amount to a constitutional claim unless the delay caused substantial harm." *Williams v. Raimo*, 2011 WL 6026111, *5 (N.D.N.Y. 2011) (internal quotation omitted). A plaintiff must show either that the underlying medical condition "*actually* worsened as a result of the delay" or must show "very likely future harm" resulting from the delay; conclusory allegations of what "might" have occurred as a result of delay are insufficient. *See DiChiara v. Wright*, 2011 WL 1303919, *6 (E.D.N.Y.) (citing *Helling v. McKinney*, 509 U.S. 25, 32-33 (1993) and *Smith*, 316 F.3d at 186), *report and recommendation adopted as modified*, 2011 WL 1303867 (E.D.N.Y. 2011).

With respect to the second prong, the legal standard to be applied differs depending upon whether the plaintiff was a pretrial detainee or a convicted prisoner. *See Darnell v. Pineiro*, 849 F.3d at 35. Pretrial detainees, whose claims are governed by the Fourteenth Amendment, must allege that the defendant acted with objective unreasonableness; convicted prisoners, by contrast, must allege that the defendant acted with subjective awareness of the risk of harm. *See id.*; *Bruno v. City of Schenectady*, 2018 WL 1357377 at *2-3 (applying objective reasonable person standard to second prong of deliberate indifference claim asserted by pretrial detainee); *Davis v. McCready*, 283 F. Supp. 3d 108, 117 (S.D.N.Y. 2017) ("the *mens rea* prong of a deliberate indifference claim brought by a pretrial detainee is now to be assessed objectively").

Thus, Bowden must allege that Collesano "acted *intentionally* to impose the alleged condition, *or recklessly* failed to act with reasonable care to mitigate the risk that the condition posed to [Bowden] even though [Collesano] *knew, or should have known*, that the condition posed an excessive risk to health or safety." *Bruno*, 2018 WL 1357377 at *2 (quoting *Darnell*, 849 F.3d at 35); *Feliciano*, 2017 WL 1189747 at *13 (for claims involving "deliberate

16

indifference to serious medical needs, the [c]ourt concludes that a defendant possesses the requisite *mens rea* when he acts or fails to act under circumstances in which he knew, or should have known, that a substantial risk of serious harm to the pretrial detainee would result").  Of course, it is "well-established that 'negligence, even if it amounts to medical malpractice, does not constitute a constitutional violation.'"  *Villafane v. Sposato*, 2017 WL 4179855 at *23; *Feliciano*, 2017 WL 1189747 at *13 ("the defendants' actions must be more than merely negligent") (internal quotations omitted).

I conclude that Bowden has failed to allege a claim upon which relief may be granted against Collesano.  In his original complaint, interpreted liberally, Bowden sought to hold Collesano liable for the allegedly inadequate treatment he received during the entire five days that he was at ECHC because her job was to "over[see] patients at ECHC."  (Docket # 1 at ¶ 32).  However, "[i]t is well settled . . . that *respondeat superior* cannot form the basis for a § 1983 claim."  *Byrd v. City of New York*, 2018 WL 259316, *9 (S.D.N.Y. 2018) (internal quotation omitted) (plaintiff failed to state deliberate indifference claim against doctor where plaintiff failed to allege that the doctor was personally involved in any of the alleged delays in plaintiff's treatment).  Moreover, Bowden's proposed amended complaint does not include that allegation.  (*See* Docket # 32).

Further, none of Bowden's other factual allegations would be sufficient, if proven, to establish that Collesano was deliberately indifferent to his medical needs.  Although he alleges that he informed Collesano of his medical needs by letter,[11] he does not allege when he sent the letter or when (or whether) Collesano received the letter.  *See Armstead v. Dep't of Corr. Cmty.*

---

[11]  Collesano disputes that Bowden sent or that she received a letter, maintaining that his allegations on this point are inconsistent because his original complaint alleges that the letter was directed to the "head nurse."  (Docket ## 50 at ¶ 29 & n.11; 51 at ¶ 17 & n.5).  Such factual disputes are not properly resolved at this stage, and Bowden's allegations must be accepted for purposes of this motion.

*Supervision*, 2013 WL 1312017, *4 (E.D.N.Y. 2013) ("[plaintiff's] complaint still falls short, since it offers no facts to show that either of the supervisory defendants actually received and read his letters, or that they were at any point aware of the circumstances of his detention") (collecting cases). Nor does he allege that Collesano failed to act upon learning of his condition.

Bowden's failure to adequately assert a claim against Collesano is underscored by his own statements that make clear that his deliberate indifference claim is directed toward the conduct of Jane Does 2 and 3. (Docket ## 32 at ¶¶ 13-14, 19; 58 at 5 n.1). By contrast, Bowden concedes that Collesano immediately referred him for surgery when she evaluated him on September 25. (Docket ## 36 at 21; 58 at 5 n.1). Bowden's submissions also confirm that after Collesano referred him to Dr. Rohrbacher, imaging of Bowden's arm was performed the following day, and surgery the day after that. (Docket ## 1 at ¶¶ 29, 32; 32 at ¶ 15; 36 at 21-22). There are no allegations to suggest that the period between her referral and his surgery, even if viewed as delay, may be attributable to Collesano's conduct.

In sum, Bowden's own factual allegations, rather than suggesting that Collesano was deliberately indifferent to his needs, support the conclusion that she acted promptly when she first evaluated him to obtain appropriate medical treatment for him. Considering these allegations, I find that Bowden has failed to state a claim for deliberate indifference against Collesano and that she is entitled to dismissal of the claims against her.[12] *See Campanello v. Ponte*, 2017 WL 4122705, *4 (S.D.N.Y.) (plaintiff failed to allege deliberate indifference claim where doctor, upon evaluation, prescribed pain medication and referred plaintiff for orthopedic examination), *report and recommendation adopted*, 2017 WL 4124337 (S.D.N.Y. 2017); *Lloyd v. City of New York*, 246 F. Supp. 3d 704, 720 (S.D.N.Y. 2017) ("[p]laintiff does not assert that

---

[12] Because I recommend dismissal of the claims asserted against Collesano, her requests to stay discovery (Docket # 52 at 24-26) or to extend the scheduling deadlines (Docket ## 66, 67) should also be denied.

she was deprived of treatment, only that her treatment was delayed by one day[;] . . . [a]ssuming

the delay was in any way attributable to [doctor], this amounts to negligent conduct at most, and

'negligence, even if it constitutes medical malpractice, does not, without more, engender a

constitutional claim").

### 3.    Claims Against Howard

 Bowden also seeks to amend his complaint to add Howard as a defendant.

(Docket # 32 at 2, 6 at ¶ 14, 7 at ¶ 18, 9 at ¶ 25).  The precise contours of the alleged claim

against Howard are unclear, but it relates to an alleged policy purportedly promulgated by

Howard that "inmates follow the medical protocol of the [n]urse [p]rovider[s] or they are to be

classified as refusing treatment."  (Docket # 32 at 6, ¶ 14).  Howard opposes the motion to

amend, maintaining that any claim against him is time-barred and does not relate back to the

filing of the original complaint.  (Docket # 48).

        Section 1983 does not itself contain a statute of limitations.  Courts must therefore

"borrow" the limitations period from the most appropriate or analogous state statute.  *Bd. of*

*Regents of Univ. of State of New York v. Tomanio*, 446 U.S. 478, 483-84 (1980).  The statute of

limitations for unspecified injury actions in New York is three years.[13]  *See* N.Y. C.P.L.R.

§ 214(5); *Owens v. Okure*, 488 U.S. 235, 251 (1989) (applying New York's three-year statute of

limitations to Section 1983 case).  In determining the date upon which a Section 1983 claim

accrues, however, federal law is controlling.  *See Morse v. Univ. of Vt.*, 973 F.2d 122, 125 (2d

Cir. 1992).  A Section 1983 claim is deemed to accrue when the plaintiff "knows or has reason to

---

[13]    Howard maintains that the one-year statute of limitations set forth in N.Y. C.P.L.R. § 215 applies to the
proposed claim against him.  (Docket # 48 at 5-11).  Even judged under the more generous limitations period
provided in CPLR § 214(5), the claim is time-barred.

know of the injury which is the basis of his action." *Singleton v. City of New York*, 632 F.2d 185, 191 (2d Cir. 1980).

The claims against Howard arise from the same incident at the heart of the pending complaint – medical treatment, or the lack thereof – provided to Bowden between September 21 and 26, 2012, approximately four and one-half years before Bowden filed the pending motion to amend. I agree with Howard that the claims against him are time-barred and thus futile unless Bowden can demonstrate that the relation back doctrine applies.

The relation back doctrine allows claims that are otherwise untimely to relate back to the claims in the original complaint. *See* Fed. R. Civ. P. 15(c); *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35 (2d Cir. 1996). Under Rule 15(c)(1) of the Federal Rule of Civil Procedure, a plaintiff may amend a complaint in a federal action after the expiration of the limitations period when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1).

Because the limitations period in this case derives from state law, Rule 15(c)(1)(A) directs the court to consider both federal and state law and employ whichever affords a "more forgiving" principle of relation back.  *See*, *e.g.*, *Hogan v. Fischer*, 738 F.3d 509, 518 (2d Cir. 2013); *Peralta v. Donnelly*, 2009 WL 2160776, *3 (W.D.N.Y. 2009); *Murphy v. West*, 533 F. Supp. 2d 312, 316 (W.D.N.Y. 2008); *Wilson v. City of New York*, 2006 WL 2528468, *2 (S.D.N.Y. 2006); *see also* Fed. R. Civ. P. 15(c)(1) advisory committee's note to 1991 amendment ("[w]hatever may be the controlling body of limitations law, if that law affords a more forgiving principle of relation back than the one provided in this rule, it should be available to save the claim").

Analyzing federal law first, I find that Bowden cannot satisfy the relation back doctrine because he has not demonstrated that his failure to name Howard as a defendant within the limitations period resulted from a mistake of identity.  Bowden's original complaint contains no allegations to suggest that any of his alleged injuries were the result of any policy or custom, much less one promulgated by Howard.  Bowden has offered no explanation for his delay in seeking to add Howard as a defendant in this action and certainly has not suggested that it was the result of mistaken identity.  Indeed, in response to Howard's opposition, Bowden has not adduced any facts to suggest that he ever considered asserting this claim prior to the expiration of the statute of limitations, much less that he contemplated the claim but failed to assert it against Howard due to mistake in identity.  Under federal law, it is simply too late for Bowden to add Howard to this lawsuit.  *Briggs v. Cty. of Monroe*, 2016 WL 1296060, *9 (W.D.N.Y.) ("[p]laintiffs' proposed addition of the new defendants in this case does not seek to cure any mistake of identity; rather, it seeks to cure plaintiffs' ignorance of the potential culpability of the proposed defendants[;] [t]hat it does so after the expiration of the statute of limitations is fatal to

plaintiffs' motion"), *report and recommendation adopted*, 215 F. Supp. 3d 213, 217 (W.D.N.Y. 2016) (adopting report and recommendation and questioning, without deciding, "whether the addition of entirely new parties is permitted within the plain language of Rule 15(c)(1)(C)").

Turning to New York state law, I find that Bowden's proposed claim against Howard fares no better.  Under New York's relation back doctrine, as interpreted by New York courts, the plaintiff must show, among other things, that the failure to name the proposed defendant was the result of a "mistake by plaintiff as to the identity of the proper part[y]."  *See Neal v. Wilson*, 239 F. Supp. 3d 755, 761 (S.D.N.Y. 2017) ("[N.Y. CPLR § 203] has been interpreted to embody essentially the same limitation as Federal Rule 15(c)(1)(C), . . . namely, requiring the plaintiff to show that 'the new party knew or should have known that, but for an excusable mistake by plaintiff as to the identity of the proper parties, the action would have been brought against him as well'") (quoting *Buran v. Coupal*, 87 N.Y.2d 173, 178 (N.Y. 1995)); *Briggs v. Cty. of Monroe*, 2016 WL 1296060 at *10 ("many district courts have held that the 'mistake' requirement of Rule 15(c)(1)(C) is similar to the mistake requirement of Section 203 of the New York Civil Practice Law and Rules, the relevant New York relation back provision"). *Cf. DaCosta v. City of New York*, 2017 WL 5176409, *11-13 (E.D.N.Y. 2017) (discussing New York's relation-back rules and identifying apparent conflicts in how "different appellate departments evaluate the [mistake] prong," particularly in cases involving Doe defendants).  As noted above, Bowden has made no attempt to explain his failure to name Howard earlier, and his original complaint contains no allegations involving the alleged policy Bowden now attributes to Howard.  Thus, nothing in the record supports a conclusion that the failure to name Howard was due to a mistake in identity.  Because Bowden has not demonstrated that his failure to name Howard earlier resulted from a mistake in identity, New York's relation back doctrine likewise

does not afford him relief.  *See Briggs v. Cty. of Monroe*, 215 F. Supp. 3d 213, 217 (W.D.N.Y. 2016) ("this [c]ourt agrees with [the] conclusion that for the same reason a mistake is not present under Rule 15(c)(1)(C), it is also not present under the corresponding provision found at Section 203 of New York's Civil Practice Law and Rules").

   For the reasons discussed above, I conclude that Bowden has failed to establish that his otherwise time-barred claim against Howard relates back to the original complaint under federal or state law principles.  To permit amendment to add Howard now would be an act of futility, and I recommend that the district court deny Bowden's motion to amend insofar as it seeks to add Howard as a defendant to this action.

### C. <u>Claims Against City Defendants</u>

   Bowden seeks to amend his complaint to assert a conspiracy claim against defendants Acquino and Hamilton and apparently to substitute the City of Buffalo Police Department as a defendant in place of the City.[14]  (Docket # 32).  Other than substituting the Police Department for the City, Bowden's failure to train allegations remain largely unchanged from his original complaint.[15]  (*Compare* Docket # 1 at 10, ¶ A *with* Docket # 32 at 8, ¶ 22). With respect to Acquino and Hamilton, Bowden seeks leave to add a claim against them that they conspired to violate his civil rights by coercing his discharge from ECMC in order "to cover-up their actions."  (Docket # 32 at ¶¶ 9-10, 22).

   The City Defendants oppose Bowden's motion on several grounds.  (Docket # 53-3).  First, they argue that the proposed amendments are untimely under Rule 15 of the

---

[14] *See* footnote 2 *supra*.

[15] Although Bowden has moved his allegations to the "Relief Demanded" section of the proposed amended complaint, paragraph 22 reasserts the failure to train claim that is included in his original complaint.  (*Compare* Docket # 1 at 10, ¶ A *with* Docket # 32 at ¶ 22).

Federal Rules of Civil Procedure.  (*Id.* at 2-6).  With respect to the claims against the City, they maintain that the City of Buffalo Police Department is not a proper party, and that, in any event, Bowden has failed to sufficiently allege a claim for municipal liability against the City.  (*Id.* at 7-9).  They likewise contend that Bowden has failed to sufficiently allege a conspiracy claim against Acquino and Hamilton.  (*Id.* at 8).  Finally, they oppose Bowden's motion to the extent that it seeks leave to add state law claims, maintaining that he failed to comply with the requirements of Section 50 of the New York General Municipal Law.  (*Id.* at 9).

I agree with the City Defendants that the City of Buffalo Police Department is not a proper party to this litigation, and I recommend denial of Bowden's motion insofar as he seeks to substitute the Police Department as a party in place of the City.  *See Rhodes v. Sanford*, 2013 WL 3897562, *7 (W.D.N.Y. 2013) ("the Police Department is not a proper defendant in a Section 1983 suit").  I disagree with the City Defendants, however, that Bowden's motion should be denied on the grounds that the *Monell* claim is insufficiently pled.

In his original complaint, Bowden maintained that the City failed to properly train its employees and that it was "under investigation for improper tactics and brutality at the time of the incident and after."  (Docket # 1 at 10, ¶ 39).  Those allegations have already been reviewed by Judge Wolford and permitted to proceed.  *See Manon v. Hall*, 2015 WL 8081945, *3 (D. Conn. 2015) ("[d]efendants' motion in effect seeks reconsideration of this [c]ourt's prior initial review order, but a party should pause before making such a request absent particularly compelling reasons such as 'mistake, inadvertence, surprise, or excusable neglect'[;] . . . a party should never . . . seek dismissal of claims that the [c]ourt has determined to be non-frivolous solely on the basis that the moving party disagrees"); *see also Neary v. Naqvi*, 2017 WL 3205471, *12 (D. Conn. 2017) (same).  Opposition to Bowden's proposed party substitution is

not the proper procedure to challenge the adequacy of his *Monell* allegations against the City. Rather, the City should have moved for reconsideration of Judge Wolford's order permitting the claim to proceed, or affirmatively moved for dispositive relief on the claim.

           With respect to the conspiracy allegations against Acquino and Hamilton, I agree with the City Defendants that such allegations do not state a claim. As noted above, Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Because claims of conspiracy are "so easily made and can precipitate such protracted proceedings[,] . . . detailed fact pleading is required to withstand a motion to dismiss." *Angola v. Civiletti*, 666 F.2d 1, 4 (2d Cir. 1981). Accordingly, a plaintiff seeking to assert a claim of conspiracy to violate civil rights must allege "more than general allegations"[;] conclusory allegations are insufficient. *See Charles v. Maleh*, 2006 WL 581206, *13-14 (D. Conn. 2006); *Bourguignon v. Lantz*, 2006 WL 214009, *8-9 (D. Conn. 2006); *Brewster v. Nassau Cty.*, 349 F. Supp. 2d 540, 547 (E.D.N.Y. 2004) ("[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss") (quoting *Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir.), *cert. denied*, 464 U.S. 857 (1983)). "A plaintiff alleging a civil rights conspiracy must, at the very least, plead facts to demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." *Okoi v. El Al Israel Airlines*, 2006 WL 3501224, *4 (E.D.N.Y. 2006). This, Bowden has failed to do. Rather his conspiracy claim is wholly conclusory and unsupported by any specific factual allegations of an agreement between Acquino and Hamilton to coerce the treating physician to discharge Bowden from the hospital in an effort to cover up their allegedly unconstitutional conduct. On this

record, I conclude that Bowden should not be permitted to amend his complaint to assert a conspiracy claim, and I recommend denial of this portion of his motion.[16]

Finally, the City Defendants maintain that any state law claims asserted in the proposed amended complaint are futile because Bowden failed to comply with New York General Municipal Law § 50. They have not, however, identified any specific state law claims in the proposed amended complaint, and I do not interpret or understand any of Bowden's claims to seek relief under state law. The district court likewise identified only federal claims in the original complaint in its screening order pursuant to 28 U.S.C. § 1915. (Docket # 3 at 1 (Bowden "commenced this action on September 11, 2015, pursuant to 42 U.S.C. § 1983, alleging Defendants violated his constitutional rights")). Thus, I find it unnecessary to resolve whether any such claims are futile.

## CONCLUSION

### Report & Recommendation
### (Collesano, Howard, City of Buffalo Police Department)

For the reasons discussed above, I recommend that the district court deny Bowden's motion to amend his complaint to add Howard as a defendant, substitute the City of Buffalo Police Department as a party to the action, and assert a conspiracy claim against Acquino and Hamilton. **(Docket ## 32, 36)**. I further recommend that Collesano's cross-motion for dismissal of the claims against her **(Docket ## 49, 50, 51, 52)** be granted. In addition, Collesano's request to stay discovery **(Docket # 52)** and motion to extend the scheduling order **(Docket # 66)** should be denied as moot.

---

[16] Because I conclude that Bowden should not be permitted to amend his complaint with respect to the claims asserted against the City Defendants, I do not address their challenge to timeliness of the proposed amendments. (Docket # 53-3 at 2-6).

26

**<u>Decision & Order</u>**
**(Tirone and Brown)**

Bowden's motion for leave to file an amended complaint to add Tirone and Brown as defendants **(Docket ## 32, 36)** is **GRANTED**. **Bowden is directed to submit an amended complaint setting forth in one document his original claims and the permitted claims against Brown and Tirone**. Such amended complaint must be filed with the Clerk of the Court by no later than **April 30, 2018**. If Bowden elects not to file an amended complaint by that date, the original complaint shall remain the operative pleading.

Upon receipt of Bowden's amended complaint, because plaintiff is proceeding in this action *in forma pauperis*, the Clerk of the Court is directed to cause the United States Marshal to serve copies of the Summons, Amended Complaint, and this Order upon defendants Tirone and Brown without plaintiff's payment therefore, unpaid fees to be recoverable if this action terminates by monetary award in the plaintiff's favor. Service of the amended complaint on the defendants who have already appeared in this action shall be made by the Clerk's mailing of a copy of the amended complaint to each defendant's attorney of record.

Pursuant to 42 U.S.C. § 1997e(g)(2), defendants Tirone and Brown are directed to answer the amended complaint. The defendants who have already answered need not file amended answers. This Court will conduct a status conference on **June 27, 2018**, at **10:30 a.m.** **IT IS SO ORDERED.**

*Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
        March 29, 2018

27

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby

**ORDERED**, that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report and Recommendation in accordance with the above statute, Fed. R. Civ. P. 72(b), 6(a) and 6(d) and Local Rule 72(b).

The district court will ordinarily refuse to consider on *de novo* review arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. *See e.g. Paterson-Leitch Co., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Sec'y of Health & Human Servs.*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections . . . shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b), or with the similar provisions of Rule 72(a) (concerning objections to a Magistrate Judge's Decision and Order), may result in the District Court's refusal to consider the objection.**

Let the Clerk send a copy of this Order and a copy of the Report and Recommendation to the attorneys for the Plaintiff and the Defendant.

**IT IS SO ORDERED.**

*Marian W. Payson*
MARIAN W. PAYSON
United States Magistrate Judge

Dated: Rochester, New York
March 29, 2018