UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

RICHARD BOWDEN,

                          Plaintiff,

      v.

CITY OF BUFFALO, MICHAEL J.
ACQUINO, MARK HAMILTON,
MATTHEW J. BROWN, M.D., CHARLES
TIRONE, M.D., JANE DOE #2—NURSE ERIE
COUNTY HOLDING CENTER, JANE DOE #3—
NURSE ERIE COUNTY HOLDING CENTER,

                        Defendants.
_____

**DECISION AND ORDER**

6:15-CV-06565 EAW

## I.    __INTRODUCTION__

Pending before the Court is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on behalf of defendant Charles Tirone, M.D. ("Dr. Tirone"). (Dkt. 120). For the reasons set forth below, the motion is granted.

## II.    __FACTUAL BACKGROUND__

The following facts are taken from Dr. Tirone's Statement of Undisputed Facts (Dkt. 120-12) and the exhibits submitted in support of the motion. Because plaintiff Richard Bowden ("Plaintiff") failed to submit an opposing statement of material facts, to the extent supported by admissible evidence, the factual statements contained in Dr. Tirone's Statement are deemed admitted for purposes of the motion. *See* L. R. Civ. P. 56(a)(2); *see also N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) ("district courts have the authority to institute

local rules governing summary judgment submissions" although "[r]eliance on a party's statement of undisputed facts may not be warranted where those facts are unsupported by the record").

This action arises from Plaintiff's arrest on September 21, 2012, by Buffalo City Police Officers Acquino and Hamilton, and subsequent medical treatment at the Erie County Medical Center ("ECMC") in Buffalo, New York.  (Dkt. 90).  On the date in question, Dr. Tirone was neither present nor involved with Plaintiff's treatment.  In fact, Dr. Tirone never had any direct involvement with Plaintiff.  (*See* Dkt. 124 at 3 (Plaintiff's answer to interrogatory 7)).  Rather, the basis for Plaintiff's claims against Dr. Tirone relate to his review of imaging done on Plaintiff's fractured arm several days after the incident. Plaintiff contends that Dr. Tirone incorrectly indicated that the arm had been properly set, when in fact it had not.  (*See id*. at 4 (Plaintiff's answer to interrogatory 10)).

After his arrest on September 21, 2012, Plaintiff was transported by law enforcement to ECMC, arriving at 4:56 pm.  (Dkt. 120-12 at ¶ 15).  According to the emergency room record, Plaintiff sustained wrist pain and an obvious radial/ulna deformity while fleeing from law enforcement.  (*Id*. at ¶ 16).  A nursing triage assessment performed at 5:06 pm noted that Plaintiff was "with police and EMS for open forearm fx [fracture]" (*id*. at ¶ 17), and Plaintiff's chief complaint was "arm deformity" (*id*. at ¶ 18).  Emergency department resident physician Ryan Snyder, M.D. examined Plaintiff, noted an "obvious radial/ulnar deformity" (*id*. at ¶ 19), and at 5:34 pm, he ordered pre-reduction imaging of Plaintiff's left forearm, left wrist, and left hand (*id*. at ¶ 20).  An orthopedic consult was also requested.  (*Id*. at ¶ 21).

Resident physician Matthew Brown, M.D., who was on the service of orthopedic surgeon Bernard J. Rohrbacher, M.D., provided the orthopedic consult and performed a reduction of Plaintiff's left forearm.  (*Id*. at ¶¶ 21-22).  Thereafter, Dr. Brown ordered post-reduction imaging of Plaintiff's left forearm.  (*Id*. at ¶ 23).  According to Department of Imaging Services documentation, post-reduction imaging of Mr. Bowden's left arm was obtained at 6:42 pm on September 21, 2012.  (*Id*. at ¶ 24).  The imaging was not read by any radiologist on September 21, 2012.  (*Id*. at ¶ 25).  More specifically, Dr. Tirone did not review the imaging that evening.  (*Id*.).  He was not involved, or present, at ECMC.  (*Id*.).  Instead, Dr. Tirone reviewed both the pre-reduction and post-reduction imaging on Monday, September 24, 2012.  (*Id*.).

On September 21, Dr. Brown documented that Plaintiff should "f/u [follow-up with] Dr. Rohrbacher [in] 1 week."  (*Id*. at ¶ 27).  Plaintiff signed an informed consent form indicating that Dr. Rohrbacher would perform a "left both bone forearm fracture open reduction internal fixation."  (*Id*. at ¶ 28).  The surgery was not scheduled at that time.  (*Id*.).  Dr. Brown co-signed the informed consent form.  (*Id*.).  This indicates that a non-emergent surgery was part of the planned course of treatment before Dr. Tirone ever read the imaging.  (*Id*.).  The record establishes that that plan never changed.

Plaintiff was discharged into the custody of law enforcement at 10:26 pm.  (*Id*. at ¶ 29).  In his discharge instructions, Plaintiff was advised to "keep splint on, elevate," and to call for a follow-up appoint with Dr. Rohrbacher.  (*Id*. at ¶ 30).  Further, he was to return to the emergency room with any new or worsening symptoms.  (*Id*.).

- 3 -

By the time Dr. Tirone reviewed the imaging in question, Plaintiff had long since been discharged from ECMC.  (*Id*. at ¶ 34).  Dr. Tirone reviewed the imaging from September 21, 2012, nearly three days after Plaintiff's discharge —on September 24, 2012 —as part of a secondary review and formal interpretation following the initial interpretation by the orthopedists at ECMC, which was already performed on September 21, 2012.  (*Id*. at ¶ 32).  Dr. Tirone was a private radiologist and subcontractor for Saturn Radiology, a private company that had a contract with ECMC to provide radiologic services at ECMC.  (*Id*. at ¶ 33).  Dr. Tirone did not have any contract with ECMC.  (*Id*.).  Dr. Tirone was not an employee of ECMC, Erie County, New York State, or any governmental entity.  (*Id*.).

Plaintiff's Medical Intake Screening Form for the Erie County Holding Center ("ECHC"), dated September 22, 2012, demonstrates a left arm fracture and half cast.  (*Id*. at ¶ 35).  The records of the Erie County Sheriff's Office reveal that Plaintiff was seen by former defendant Janet Collesano, N.P. ("Collesano") at the ECHC on September 25, 2012.  (*Id*. at ¶ 36).  Collesano noted that Plaintiff stated he "broke both bones in [his] lower arm" and "needs surgery for alignment."  (*Id*. at ¶ 37).  The bottom of Plaintiff's cast was missing.  (*Id*. at ¶ 38).  Plaintiff claimed he hit the bottom against the frame of his bed.  (*Id*.).  On September 25, 2012, Collesano requested the records of ECMC and instructed that an appointment be made with Dr. Rohrbacher as soon as possible regarding Plaintiff's open arm fracture.  (*Id*. at ¶ 39).

On September 26, 2012, Plaintiff returned to ECMC with his arm in a splint for a follow-up appointment.  (*Id*. at ¶ 41).  At ECMC, Plaintiff was seen by James Mikulsky,

RPA-C.  (*Id*. at ¶ 42).  Mr. Mikulsky obtained and reviewed imaging for Plaintiff at this appointment.  (*Id*. at ¶ 43).  Based upon the imaging, Mr. Mikulsky noted "forearm in a splint, distal BBFF [both bone forearm fracture], 80° dislocated, each distal fragment."  (*Id*. at ¶ 44).  Mr. Mikulsky noted that Plaintiff needed to follow-up for an open reduction internal fixation ("ORIF") surgery.  (*Id*. at ¶ 45).  In an Erie County Consult Form, Mr. Mikulsky noted "left distal both bone forearm [fracture], recommend to surgically repair, ORIF."  (*Id*. at ¶ 46).  The record from September 26 indicates that the surgery was scheduled for October 3, 2012.  (*Id*. at ¶ 47).

The imaging obtained on September 26, 2012, was reviewed two days later by a radiologist on September 28, 2012.  (*Id*. at ¶ 48).  Dr. Rohrbacher was copied on the radiology report of September 28, 2012 (*id*. at ¶ 49), which noted that "[r]eduction and cast for fracture of distal radius and ulna fracture fragments are in partial alignment.  No significant change since this x-ray of September 21, 2012."  (*Id*. at ¶ 50).  Dr. Rohrbacher did not change the date of the surgery based on this radiology report, which he was copied on as of September 28, 2012.  (*Id*. at ¶ 51).  In his operative report from October 3, 2012, Dr. Rohrbacher indicated that Plaintiff was "admitted . . . for elective open reduction internal fixation left radius ulna shaft fractures."  (*Id*. at ¶ 52).

## III.   **PROCEDURAL BACKGROUND**

Plaintiff commenced this lawsuit on September 11, 2015.  (Dkt. 1).  In his original complaint, Plaintiff named the City of Buffalo, Officers Acquino and Hamilton, ECMC, and certain Jane Doe defendants.  (*Id*.).  That complaint asserted claims pursuant to 42 U.S.C. § 1983 for excessive use of force and inadequate medical care at ECMC and ECHC.

(*Id*.).  In a Decision and Order entered November 20, 2015, the undersigned granted Plaintiff's motion to proceed *in forma pauperis*, and upon screening the complaint pursuant to 28 U.S.C. §§ 1915(e) and 1915A, allowed Plaintiff's claims to proceed except as to ECMC.  (Dkt. 3).  In addition, pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997), the Court directed the Erie County Attorney to ascertain the names of the Jane Doe defendants.  (*Id*.).  In response, the Erie County Attorney's office identified Collesano as Jane Doe #1, but was unable to identify Jane Doe #2 or Jane Doe #3.  (Dkt. 5).

The undersigned referred all pretrial non-dispositive matters to Magistrate Judge Payson (Dkt. 13), and on June 7, 2016, Judge Payson issued a scheduling order requiring all amendments to be filed by March 31, 2017, all discovery to be completed by September 29, 2017, and all dispositive motions to be filed by March 30, 2018 (Dkt. 17).  On March 28, 2017, Judge Payson granted Plaintiff's request for a 60-day extension to move to join other parties or amend the pleadings, and similarly extending all other scheduling deadlines by 60 days.  (Dkt. 28).  On June 7, 2017, Plaintiff filed a motion to amend his complaint. (Dkt. 36).  By Decision and Order entered July 3, 2018 (Dkt. 89), the undersigned adopted Judge Payson's Report and Recommendation (Dkt. 71) to deny Plaintiff's motion to amend the complaint to add Timothy B. Howard as a defendant, substitute the City of Buffalo Police Department as a party to this action, and assert a conspiracy claim against Officers Acquino and Hamilton; and to grant Collesano's cross-motion for dismissal of the claims against her.  Judge Payson had also made the non-dispositive decision to allow Plaintiff leave to file an amended complaint to add Dr. Tirone and Dr. Brown as defendants (Dkt.

71 at 9), and the undersigned directed Plaintiff to file his amended complaint by July 27, 2018 (Dkt. 89 at 4).

On July 30, 2018, an amended complaint was filed with the Clerk of the Court, which remains the operative pleading.  (Dkt. 90).  Service was never effectuated upon Dr. Brown (Dkt. 100), but an answer was filed on behalf of Dr. Tirone on January 7, 2019 (Dkt. 101).  An amended scheduling order was issued by Judge Payson on February 21, 2019, requiring the completion of all discovery by November 20, 2019, and the filing of all dispositive motions by May 20, 2020.  (Dkt. 102).  On May 20, 2020, Dr. Tirone filed the pending motion for summary judgment.  (Dkt. 120).  The undersigned issued a scheduling order directing Plaintiff to file any papers in opposition on or before June 25, 2020, and warning Plaintiff about the consequences of failing to do so, including that the Court may accept the defendant's factual statements as true.  (Dkt. 121).

On September 11, 2020, Judge Payson issued a Decision and Order with respect to several pending non-dispositive motions and an amended scheduling order, requiring Plaintiff to provide certain discovery by October 2, 2020, requiring the completion of all fact discovery by November 10, 2020, requiring Plaintiff to provide expert discovery by that same date, and requiring all dispositive motions to be filed by January 8, 2021.  (Dkt. 122).  On October 2, 2020, well after the deadline set by the undersigned, Plaintiff filed his response to Dr. Tirone's pending summary judgment motion.  (Dkt. 123).  The response consists of a memorandum of law but no sworn affidavits or evidentiary proof.  (*Id.*).[1]  Dr.

---

[1]     Plaintiff filed his opposition papers months after the deadline set by this Court, and his *pro se* status does not excuse compliance with Court Orders.  *Johnson v. U.S. Dep't of*

Tirone filed a reply in further support of his summary judgment motion on October 9, 2020. (Dkt. 125).

## IV.   **DISCUSSION**

### A.   Legal Standard for Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the

---

*Homeland Sec.*, No. 3:09-CV-975, 2010 WL 2560485, at *2 (N.D.N.Y. June 24, 2010) ("Plaintiff's *pro se* status does not excuse his failure to be informed of this Court's rules and procedures and to comply with the deadline for filing opposition papers."). While the Court will consider Plaintiff's opposition papers for purposes of this Decision and Order, any future untimely filings may be summarily rejected.

moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48 (1986).

Plaintiff alleges that Dr. Tirone "reviewed plaintiff X-Ray, and made a reckless determination that [sic] '. . . the traverse fractures of patient's distal third left radius and ulnar have been reduced, and the angulation has been corrected.'" (Dkt. 90 at ¶ 13). Plaintiff alleges that this diagnosis was incorrect and resulted in a delay in corrective treatment. (*Id.*). Plaintiff appears to allege that the delay occurred between September 21 and 26, 2012. (*Id.* at ¶ 20).

Dr. Tirone moves for summary judgment on various grounds: (1) the claims against Dr. Tirone are time-barred; (2) Dr. Tirone was not acting under color of state law; and (3) Dr. Tirone was not deliberately indifferent. (Dkt. 120-11). In opposition to the motion, Plaintiff argues that his claims are timely asserted because he was not aware of Dr. Tirone's involvement in the case until later in the litigation, and he further argues that the motion is premature as he seeks discovery from Dr. Tirone. (Dkt. 123). Dr. Tirone's reply papers

- 9 -

expound upon the initial bases for the motion and also respond to Plaintiff's arguments about the need for discovery. (Dkt. 125-1).

The Court concludes that the undisputed facts establish that Dr. Tirone was not acting under color of state law and that Dr. Tirone was not deliberately indifferent. Moreover, Plaintiff fails to meet the standard for denying summary judgment on the ground that additional discovery is needed. Because of the Court's conclusions in this regard, it need not and does not reach the issue with respect to the timeliness of Plaintiff's claims against Dr. Tirone.

B.   There is no genuine issue of material fact that Dr. Tirone was not a state actor.

Section 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

42 U.S.C. § 1983. "'[S]tate action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and that "the party charged with the deprivation must be a person who may fairly be said to be a state actor."'" *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) and *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

"[T]he core purpose of § 1983 is to provide compensatory relief to those deprived of their federal rights by state actors." *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 795 (2d Cir. 1999) (internal citations omitted). "The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Carlos v. Santos*, 123 F.3d 61, 65 (2d Cir. 1997); *see, e.g., Hollander v. Copacabana Nightclub*, 624 F.3d 30, 33 (2d Cir. 2010). Purely private conduct is not covered by § 1983. *Sullivan*, 526 U.S. at 50. "[C]onduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action." *Perez v. Sugarman*, 499 F.2d 761, 764 (2d Cir. 1974) (quoting *Evans v. Newton*, 382 U.S. 296, 299 (1966)).

Although there is "no single test to identify state actions and state actors . . . [t]hree main tests have emerged. . . ." *Fabrikant*, 691 F.3d at 207. The tests are: (1) the compulsion test (*i.e.*, whether the State compelled the conduct); (2) the close nexus or joint action test (*i.e.*, whether there is a sufficiently close nexus between the State and the private actor); and (3) the public function test (*i.e.*, whether the conduct consisted of activity that has traditionally been the exclusive prerogative of the State). *McGugan v. Aldana-Bernier*, 752 F.3d 224, 229 (2d Cir. 2014). "A merely conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002). "The fundamental question under each test is whether the private entity's challenged actions are

'fairly attributable' to the state." *McGugan*, 752 F.3d at 229 (quoting *Fabrikant*, 691 F.3d at 207). Notably, "[p]rivate physicians are generally not state actors, especially where the physician is not performing a function traditionally reserved for the state and where the physician was not under contract with the State to provide medical services." *Castro v. Sobkowiak*, No. 12-CV-1242A SR, 2015 WL 5316347, at *3 (W.D.N.Y. Sept. 11, 2015) (citing *Koulkina v. City of New York*, 559 F. Supp. 2d 300, 320 (S.D.N.Y. 2008) and *Vazquez v. Marciano*, 169 F. Supp. 2d 248, 253-54 (S.D.N.Y. 2001)).

Here, the amended complaint is devoid of any allegations that Dr. Tirone was acting under color of state law. (Dkt. 90). Dr. Tirone states in a declaration submitted in support of his summary judgment motion that in September 2012, he was a private radiologist and subcontractor to Saturn Radiology; that entity had a contract with ECMC but Dr. Tirone did not have any contract with ECMC; it was in his role as a private radiologist and subcontractor to Saturn Radiology that he reviewed Plaintiff's pre and post-reduction imaging for Plaintiff obtained on September 21, 2012, at ECMC; and Dr. Tirone was not employed by ECMC or any governmental entity. (Dkt. 120-8 at ¶¶ 7-9, 12). These facts remain unrefuted as Plaintiff failed to submit any evidentiary proof in opposition to the pending motion—indeed, in his untimely memorandum of law submitted in opposition to the motion for summary judgment, he does not even address this aspect of Dr. Tirone's argument. The Court concludes that on the present record, no rational jury could conclude that Dr. Tirone was operating as a state actor when he reviewed Plaintiff's imaging studies several days after his presentation to the emergency room at ECMC, and accordingly, Dr. Tirone is entitled to summary judgment on this basis. *See VanBrocklen v. Gupta*, No. 09-

CV-00897 A M, 2012 WL 7801682 (W.D.N.Y. Sept. 20, 2012), *report and recommendation adopted*, No. 09-CV-897, 2013 WL 1194727 (W.D.N.Y. Mar. 22, 2013) (private physician who performed work at ECMC pursuant to contract between ECMC and separate entity was not state actor).

  C. <u>There is no genuine issue of material fact that Dr. Tirone was not deliberately indifferent.</u>

  "To state a constitutional claim of inadequate medical care, a prisoner must allege that a defendant was deliberately indifferent to his serious medical needs." *Horace v. Gibbs*, 802 F. App'x 11, 13 (2d Cir. 2020). A plaintiff making such a claim must meet two requirements: (1) he had a "serious medical need," and (2) the defendant "acted with deliberate indifference to such needs." *Charles v. Orange Cnty.*, 925 F.3d 73, 86 (2d Cir. 2019). Dr. Tirone argues that there is no evidence to support either element, and furthermore Plaintiff cannot establish a causal link between Dr. Tirone's conduct and any alleged injury. (Dkt. 120-11 at 14-23). The Court agrees that no reasonable jury could conclude that Dr. Tirone acted with deliberate indifference, and therefore it need not and does not resolve Dr. Tirone's other arguments in support of summary judgment on this ground.

  The second requirement of a deliberate indifference claim is the *mens rea* prong. *Horace*, 802 F. App'x at 14. Here, Plaintiff was a pretrial detainee at the time of the alleged medical indifference. "While the Eighth Amendment protects incarcerated prisoners from cruel and unusual punishment in the form of inadequate medical care, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from inadequate medical

care by the state." *Thomas v. Nassau Cnty. Corr. Ctr.*, 288 F. Supp. 2d 333, 337 (E.D.N.Y.2003). In *Darnell v. Pineiro*, 849 F.3d 17 (2d Cir. 2017), the Second Circuit held that, under the Fourteenth Amendment, a "pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id*. at 35. The Second Circuit explained that the *mens rea* prong for a claim by a pretrial detainee is defined objectively. *Id*. Furthermore, the Second Circuit made it clear that "[a] detainee must prove that an official acted intentionally or recklessly, and not merely negligently." *Id*. at 36.

Here, the undisputed facts simply do not support a finding of deliberate indifference. Dr. Tirone has established through admissible evidence that his review of the imaging was appropriate and keeping with the standard of care. (Dkt. 120-8 at ¶ 22; Dkt. 120-10 at ¶¶ 10-12, 54, 60-64, 67-68). Those facts remain unrefuted. No reasonable jury could conclude that the facts in this record—which establish that Dr. Tirone acted within the standard of care—constituted malpractice, let alone deliberate indifference. Again, in order to meet his burden, Plaintiff would need to establish that Dr. Tirone acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though he knew, or should have known, that the condition posed an excessive risk to health or safety. The undisputed facts establish that Plaintiff cannot meet this burden, and thus Dr. Tirone is entitled to summary judgment.

D.   <u>The motion for summary judgment is not premature.</u>

In response to Dr. Tirone's motion, Plaintiff contends that the motion should be denied as premature and he should be entitled to depose Dr. Tirone.  (Dkt. 123).  Plaintiff does not identify any specific information that he needs through discovery to defend against the pending summary judgment motion.  In a letter to Judge Payson that was filed with his opposition papers, Plaintiff seems to suggest that there is a motion outstanding to pose interrogatory questions to Dr. Tirone (Dkt. 123 at 11), and in his memorandum of law Plaintiff contends that he "posed several interrogatories to [Dr. Tirone] . . . and asked that they be answered prior to further action taken" (Dkt. 123 at 9).  Plaintiff fails to attach any of these purported interrogatories to his opposition papers, and there is no outstanding discovery motion on the docket.  Dr. Tirone's counsel disputes the veracity of Plaintiff's claims in this regard, stating that "[P]laintiff has never, at any point, served any discovery demands on Dr. Tirone."  (Dkt. 125 at ¶ 17).

The lack of discovery, in and of itself, cannot justify denial of a properly supported motion for summary judgment.  Although Fed. R. Civ. P. 56(d) permits a party to oppose a motion for summary judgment on the ground that he needs discovery, any such opposition must demonstrate "by affidavit or declaration that, for specified reasons, [the party] . . . cannot present facts essential to justify its opposition."  *Whelehan v. Bank of Am. Pension Plan for Legacy Companies-Fleet-Traditional Ben.*, 5 F. Supp. 3d 410, 420 (W.D.N.Y. 2014), *aff'd*, 621 F. App'x 70 (2015).  "The affidavit must explain: '[ (1) ] the nature of the uncompleted discovery; [ (2) ] how the facts sought are reasonably expected to create a genuine issue of material fact; [ (3) ] what efforts the affiant has made to obtain those facts;

- 15 -

and [ (4) ] why those efforts were unsuccessful.'" *Cont'l Cas. Co. v. Marshall Granger & Co., LLP*, 921 F. Supp. 2d 111, 127 (S.D.N.Y. 2013) (quoting *Hoffmann v. Airquip Heating & Air Conditioning*, 480 F. App'x 110, 112 (2d Cir. 2012)).  "The failure to file a Rule 56(d) affidavit sufficiently explaining the need for additional discovery 'is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate.'" *Lunts v. Rochester City Sch. Dist.*, 515 F. App'x 11, 13-14 (2d Cir. 2013) (quoting *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137 (2d Cir. 1994)); *see Cross v. State Farm Ins. Co.*, 926 F. Supp. 2d 436, 446 (N.D.N.Y. 2013) (stating that if "a proper affidavit or declaration" is not submitted in support of a Rule 56(d) motion, the "application fails on this basis alone"); *see also Whelehan*, 5 F. Supp. 3d at 421 ("Merely referencing the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56(d) affidavit.").

Plaintiff has failed to submit an affidavit or declaration satisfying the requirements of Rule 56(d).  Plaintiff's conclusory requests for additional discovery in his opposition papers are insufficient to oppose Dr. Tirone's motion for summary judgment on that basis. Indeed, the extended fact discovery deadline expired in November 2020.  (Dkt. 122).  The Court agrees with Dr. Tirone that the record in this case speaks for itself, and it is apparent that he is entitled to summary judgment.

## V.    <u>**CONCLUSION**</u>

For the foregoing reasons, Dr. Tirone's motion for summary judgment (Dkt. 120) is

granted.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated:  March 26, 2021
         Rochester, New York