UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

RICHARD BOWDEN,

              Plaintiff,

v.

CITY OF BUFFALO, MICHAEL J.
ACQUINO, MARK HAMILTON,
MATTHEW J. BROWN, M.D., CHARLES
TIRONE, M.D., JANE DOE #2—NURSE ERIE
COUNTY HOLDING CENTER, JANE DOE #3—
NURSE ERIE COUNTY HOLDING CENTER,

              Defendants.
_____

**DECISION AND ORDER**

6:15-CV-06565 EAW

## I.   INTRODUCTION

Plaintiff Richard Bowden ("Bowden") brings this action pursuant to 42 U.S.C. § 1983, alleging violations of his Fourth, Fifth, and Fourteenth Amendment rights stemming from his arrest by City of Buffalo police officers on September 21, 2012. (*See generally* Dkt. 1; Dkt. 90). Plaintiff asserts claims of excessive force and unreasonable seizure against Officers Michael Acquino ("Acquino") and Mark Hamilton ("Hamilton") in violation of his Fourth and Fourteenth Amendment rights; deliberate indifference to his medical needs by Acquino and Hamilton in violation of his Fourteenth Amendment rights; and municipal liability as to the City of Buffalo for its failure to train Acquino and Hamilton. (Dkt. 90 at 2-9).[1]

---

[1] Although Plaintiff references the Fifth Amendment throughout his amended complaint (Dkt. 90), the claims he asserts are against state actors and thus, the Fifth Amendment is not implicated. *See Bussey v. Phillips*, 419 F. Supp. 2d 569, 586 (S.D.N.Y.

- 1 -

Currently pending before the Court is a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 filed on behalf of defendants City of Buffalo, Acquino, and Hamilton (collectively referred to herein as the "City Defendants"). (Dkt. 126). For the reasons set forth below, the motion is granted.

## II.   FACTUAL BACKGROUND

The following facts are taken from the City Defendants' Statement of Undisputed Facts and the exhibits submitted in support of the motion. (*See* Dkt. 126-2 through 126-7). Because Plaintiff failed to submit an opposing statement of material facts, to the extent supported by admissible evidence, the factual statements contained in the City Defendants' Rule 56 Statement are deemed admitted for purposes of the motion. *See* L. R. Civ. P. 56(a)(2); *see also N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) ("district courts have the authority to institute local rules governing summary judgment submissions" although "[r]eliance on a party's statement of undisputed facts may not be warranted where those facts are unsupported by the record").

On September 21, 2012, Officers Acquino and Hamilton, while on patrol, observed Plaintiff walking among a group of three individuals, one of whom was carrying a car radio with wires visibly hanging from the unit. (Dkt. 126-2 at ¶¶ 1-2). According to the officers,

---

2006) ("[Plaintiff's] due process claims are against state, not federal, actors, and thus the Fourteenth Amendment, rather than the Fifth Amendment, applies to these claims." (citing *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)).

they became suspicious that the radio unit was stolen from a vehicle and approached the group to inquire. (*Id.* at ¶ 3). Plaintiff placed his hand in his right coat pocket and said, "Got a go." (*Id.* at ¶ 4). Plaintiff began to run away, and, while pursuing him on foot, the officers observed him pull a small black handgun from his right coat pocket. (*Id.* at ¶ 5). The officers repeatedly gave Plaintiff commands, but he did not comply. (*Id.* at ¶ 5; Dkt. 126-6 at ¶¶ 10-11; Dkt. 126-7 at ¶¶ 10-11). As Plaintiff tried to maneuver over a parked vehicle, Acquino tackled Plaintiff to the ground, knocking the handgun out of Plaintiff's hand. (Dkt. 126-2 at ¶¶ 6-7). Plaintiff grabbed the handgun, refusing to comply with the officers' commands to drop the firearm. (*Id.* at ¶ 8). Hamilton eventually pried the gun away from Plaintiff, after which Plaintiff was taken into custody and placed under arrest. (*Id.* at ¶¶ 9-10).

Plaintiff complained of injuries to his arm, and an ambulance was called to the scene for evaluation and medical treatment. (*Id.* at ¶ 11). Plaintiff was transported to the Erie County Medical Center ("ECMC"), where he was seen by medical personnel and received diagnostic testing, medical examination, and treatment. (*Id.* at ¶¶ 11-13). Acquino and Hamilton deferred to the guidance of medical personnel and did not interfere with the examination or treatment of Plaintiff. (*Id.* at ¶ 14). Upon completion of his examination and discharge from ECMC, Plaintiff was transported to "the city lock up" for processing. (*Id.* at ¶ 15). Plaintiff was charged with Criminal Possession of a Weapon in the Second Degree in violation of New York Penal Law § 265.03(3), and Resisting Arrest in violation of New York Penal Law § 205.30. (*Id.* at ¶¶ 16-17; Dkt. 126-4). On November 14, 2012, Plaintiff pleaded guilty to the weapons possession charge, and was sentenced as a second

felony offender to seven years imprisonment and five years post-release supervision. (Dkt. 126-2 at ¶ 17; Dkt. 126-5)

### III. PROCEDURAL BACKGROUND

A comprehensive recitation of the procedural history of this case is contained in this Court's Decision and Order dated March 26, 2021, granting defendant Charles Tirone's motion for summary judgment, familiarity with which is assumed for purposes of this Decision and Order. (Dkt. 134 at 5-8).

The City Defendants moved for summary judgment on January 8, 2021. (Dkt. 126). On January 11, 2021, this Court issued a motion scheduling order and notice to Plaintiff, advising him of the Court's February 8, 2021, deadline for his response to the motion for summary judgment and the consequences should he fail to respond thereto. (Dkt. 128). On January 28, 2021, Plaintiff was granted an extension of time until February 26, 2021, to respond to the City Defendants' motion. (Dkt. 130). The City Defendants filed a memorandum in further support of their motion for summary judgment on March 10, 2021. (Dkt. 131). To date, Plaintiff has not responded to the motion for summary judgment.

### IV. DISCUSSION

#### A. Legal Standard for Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could

find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Rather, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby*, Inc., 477 U.S. 242, 247-48 (1986).

Plaintiff alleges in his amended complaint that during the course of his arrest, he was "gang-tackled, beaten about his head, face, and body, stomped and kicked" by Acquino and Hamilton. (Dkt. 90 at 4). He further alleges that, after his transfer to ECMC, Acquino

and Hamilton "coerced" an attending physician into releasing Plaintiff, preventing Plaintiff from undergoing a necessary surgery to correct the fracture in his arm. (*Id.* at 4-5). Finally, Plaintiff alleges that the Buffalo Police Department failed to properly train Acquino and Hamilton. (*Id.* at 9).

The City Defendants seek summary judgment in their favor on the following grounds: (1) Acquino and Hamilton are entitled to qualified immunity from Plaintiff's excessive force claim; (2) Plaintiff's denial of medical treatment claim lacks merit; and (3) Plaintiff cannot establish a viable *Monell* claim against the City of Buffalo. (Dkt. 126-1 at 8-20).

For the reasons that follow, the Court finds that the City Defendants are entitled to summary judgment.

B.     <u>Acquino and Hamilton are entitled to qualified immunity.</u>

"Qualified immunity insulates public officials from claims for damages where their conduct does not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Defore v. Premore*, 86 F.3d 48, 50 (2d Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Court "must look to both the clarity of the law establishing the right allegedly violated as well as whether a reasonable person, acting under the circumstances the[n] confronting a defendant, would have understood that his actions were unlawful." *Ford v. McGinnis*, 352 F.3d 582, 596-97 (2d Cir. 2003) (quotations omitted).

"'Clearly established' means that, at the time of the officer's conduct, the law was 'sufficiently clear' that every 'reasonable official would understand that what he is doing'

is unlawful." *District of Columbia v. Wesby*, ___ U.S. ___, 138 S. Ct. 577, 589 (2018) (quotation omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* (quotation omitted). "The rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *Id.* at 589-90 (citation and quotations omitted). "It is not enough that the rule is suggested by then-existing precedent. The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* at 590.

"[I]n the context of excessive force, the Fourth Amendment reasonableness inquiry tends to converge with the qualified immunity reasonableness inquiry." *Spencer v. Sullivan County*, No. 18-CV-365 2019 WL 4514011, at *7 n.8 (quoting *Wang v. Wahldieck*, No. 09-CV-3783, 2012 WL 119591, at *11 (E.D.N.Y. Jan. 9, 2012) (citing *Cowan v. Breen*, 352 F.3d 756, 764 & n.7 (2d Cir. 2003))). Claims that "law enforcement officials used excessive force in the course of making an arrest, investigatory stop, or other 'seizure' . . . are properly analyzed under the Fourth Amendment's 'objective reasonableness' standard. . . ." *Graham v. Connor*, 490 U.S. 386, 388 (1989). "The pertinent inquiry is 'whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Paul v. City of Rochester*, 452 F. Supp. 2d 223, 226 (W.D.N.Y. 2006) (quoting *Graham*, 490 U.S. at 397). The factors to be weighed against the degree of force used are the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or

attempting to flee. *Hodge v. City of Long Beach*, 425 F. App'x 33, 34 (2d Cir. 2011) (citations omitted); *see Cugini v. City of New York*, 941 F.3d 604, 608 (2d Cir. 2019) (governmental interests to be considered include "the severity of the crime and whether the suspect poses a safety or flight risk or resists arrest").

The City Defendants do not contest that Plaintiff's right to be free from excessive force was clearly established at the time of the arrest. Rather, they contend that the actions of Acquino and Hamilton were objectively reasonable in light of the circumstances. (Dkt. 126-1 at 10-13). The Court agrees.

It is undisputed that officers approached Plaintiff to ask about the car radio which appeared to have been stolen from a vehicle. (Dkt. 126-2 at ¶¶ 2-3). Plaintiff then placed his hand in his right coat pocket and said, "got a go," and began to run. (*Id*. at ¶¶ 4-5). While pursuing Plaintiff, Acquino and Hamilton observed him pull a small black handgun from his right coat pocket. (*Id*. at ¶ 5). Plaintiff ignored the officers' commands and attempted to maneuver over a parked vehicle, but Acquino was able to tackle him to the ground. (*Id*. at ¶¶ 5-6). Plaintiff then struggled with the officers and when the handgun was knocked out of Plaintiff's hand, he grabbed for it. (*Id*. at ¶¶ 7-8). While Plaintiff continued to ignore the officers' commands to drop the gun, Hamilton grabbed Plaintiff's arm and pried the weapon from his hand. (*Id*. at ¶¶ 8-9).

Plaintiff was in possession of a handgun, actively tried to flee from the officers' pursuits, and struggled with them over possession of the handgun. Given these circumstances, it was objectively reasonable for Acquino and Hamilton to believe that their conduct—using some degree of force to tackle Plaintiff and retrieve the gun—did not

violate Plaintiff's Fourth Amendment rights. *See Garcia v. Greco*, No. 05 CIV 9587, 2010 WL 446446, at *7 (S.D.N.Y. Feb. 9, 2010) (granting summary judgment where "Defendant's interest in preventing the escape of a gun-wielding fugitive, as well as his interest in the safety of his fellow officers, supports the reasonableness of Defendant's use of force in arresting Plaintiff"); *Hardy v. Plante*, No. 06-CV-687, 2009 WL 249787, at *6 (N.D.N.Y. Feb. 3, 2009) (Defendants were entitled to qualified immunity where "[Plaintiff] matched the description of a suspect in a stabbing. Therefore, it was certainly reasonable for Defendants to conclude that he could have been in possession of a knife, and the record shows that Defendants did recover a knife handle from [Plaintiff] following his arrest. [Plaintiff] also resisted arrest[.]"). Nor is this a case "[w]here the circumstances are in dispute, and contrasting accounts present factual issues as to the degree of force actually employed and its reasonableness. . . ." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002) (internal quotation marks omitted). No rational jury could find that the force used was so excessive that a reasonable officer would not have made the same choice. In fact, the record evidence supports the opposite conclusion. Officers Acquino and Hamilton are therefore entitled to qualified immunity.

Finally, although Plaintiff makes passing reference to an illegal seizure (*see* Dkt. 90 at 9), he is barred from asserting a § 1983 claim with respect to the constitutionality of his stop, seizure, and arrest, under *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), which bars a collateral attack through a § 1983 action on a prior conviction or sentence. In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness

would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. at 486-87 (footnote and citation omitted). "Thus, when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.; see also McKithen v. Brown*, 481 F.3d 89, 101 (2d Cir. 2007) (*Heck* bars § 1983 claim where its success "would necessarily result in the nullification of [the plaintiff's] conviction or the shortening of his confinement").

Because Plaintiff pleaded guilty to a weapons possession charge following the recovery of a firearm during the course of his arrest, and does not claim that his conviction or sentence has been invalidated, any § 1983 claim of unconstitutionality related to the stop, seizure and arrest, is precluded. *See, e.g., Covington v. City of New York*, 171 F.3d 117, 123 (2d Cir. 1999) ("In a case where the *only* evidence for conviction was obtained pursuant to an arrest, recovery in a civil case based on false arrest would necessarily impugn any conviction resulting from use of that evidence."); *Monroe v. Gould*, 372 F. Supp. 3d 197, 203 (S.D.N.Y. 2019) (§ 1983 claim based on search that led to discovery of cocaine and conviction for criminal possession of a controlled substance was barred by *Heck*, where conviction was not invalidated in any way and § 1983 "claim that the search was unlawful would necessarily imply the invalidity of [the] conviction").

    C.    <u>The City Defendants are entitled to summary judgment on Plaintiff's denial of medical treatment claim.</u>

The Due Process Clause of the Fourteenth Amendment "require[s] the responsible government or governmental agency to provide medical care to persons . . . who have been injured while being apprehended by the police." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983). The Second Circuit Court of Appeals has recently clarified that the Fourteenth Amendment applies to claims concerning health and safety of detainees who have been arrested but not yet arraigned. *See Shakir v. Stankye*, 805 F. App'x 35, 40 (2d Cir. 2020) ("we have treated even pre-arraignment conditions of confinement claims as arising under the Fourteenth Amendment"); *see also Weyant v. Okst*, 101 F.3d 845, 856-57 (2d Cir. 1996)) (analyzing a pre-arraignment arrestee's denial of medical treatment claim under the Fourteenth Amendment standard).[2]

"[T]he official custodian of a pretrial detainee may be found liable for violating the detainee's due process rights if the official denied treatment needed to remedy a serious medical condition and did so because of his deliberate indifference to that need." *Weyant*, 101 F.3d at 856. To establish a claim for deliberate indifference, a plaintiff must satisfy (1) an "objective prong," showing that the violations were "sufficiently serious to constitute objective deprivations of the right to due process" and (2) a "subjective prong" that may be "better classified as a '*mens rea* prong' or 'mental element prong'" showing that "the

---

[2] Prior to *Shakir*, there was a split among the district courts in the Second Circuit over whether an arrestee's denial of medical care claim should be analyzed under the Fourteenth Amendment's Due Process Clause or the Fourth Amendment. *See Hawks v. Diina,* No. 05-CV-156, 2007 WL 1246953, at *6-7 (W.D.N.Y. Apr. 30, 2007) (noting the split).

officer acted with at least deliberate indifference to the challenged conditions." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

The City Defendants do not address whether Plaintiff's fractured arm was "sufficiently serious" to satisfy the objective prong. Accordingly, the Court focuses its analysis on the subjective prong, which as articulated in *Darnell* requires a plaintiff to "prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Id.* at 35. "In other words, the 'subjective prong' (or '*mens rea* prong') . . . is defined objectively, . . . [b]ut any § 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere negligence." *Id.* at 35-36.

Here, the undisputed facts establish that no rational jury could conclude that Plaintiff has satisfied the subjective prong of the test. Officers called an ambulance upon Plaintiff's complaints of injuries to his arm, and he was taken directly to ECMC, where he was seen by medical personnel. (Dkt. 126-6 at ¶¶ 17-18; Dkt. 126-7 at ¶¶ 17-18). Plaintiff's amended complaint alleges that once taken to ECMC, Acquino and Hamilton interfered with his access to medical treatment by "coercing" a physician to release him from the hospital prior to the conclusion of their shift (*see* Dkt. 90 at 4-5), but there is no support in the record for this allegation. *See Castillo v. Rodas*, No. 09 Civ. 9919, 2014 WL 1257274, at *6 (S.D.N.Y. Mar. 25, 2014) ("Summary judgment can be appropriate on the subjective prong of an inadequate-medical-care claim, and Plaintiff must point to actual evidence in the record permitting the inference that Defendants acted with deliberate indifference; he

cannot rely on conjecture or speculation."). The undisputed facts establish that neither Acquino nor Hamilton interfered in any manner with the treatment received by Plaintiff at ECMC. (Dkt. 126-6 at ¶¶ 17-18; Dkt. 126-7 at ¶¶ 17-18). Thus, to the extent Plaintiff argues that Acquino and Hamilton delayed or interfered with his access to medical treatment, such a claim must fail. *See Santiago v. City of New York*, No. 98 CIV. 6543, 2000 WL 1532950, at *6 (S.D.N.Y. Oct. 17, 2000) (Arrestee "fail[ed] to state a constitutional claim because he received medical treatment promptly after he complained of pain."); *Rivera v. State of New York*, No. 96 Civ. 7697, 1999 WL 13240, at *6 (S.D.N.Y. Jan. 12, 1999) (holding that detainee failed to state a constitutional claim when "[h]e was brought to [a] medical clinic less than one hour after his injury was reported and brought to the hospital less than two hours after the medical clinic referred him there").

    D.    <u>Plaintiff cannot prove a viable *Monell* claim.</u>

Plaintiff's last claim is construed as asserted pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), which "extends liability to a municipal organization where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). "A plaintiff making a *Monell* claim against a municipality must establish three elements: '(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.'" *Blazina v. Port Auth.*, No. 06-cv-481, 2008 WL 919671, at *6 (S.D.N.Y. Apr. 1, 2008) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

In this case, not only does the failure of Plaintiff to have a viable underlying constitutional claim against Acquino or Hamilton defeat his *Monell* claim, *see Montalvo v. Lamy*, 139 F. Supp. 3d 597, 609 (W.D.N.Y. 2015) ("Plaintiff's *Monell* claim cannot exist independently without an underlying constitutional violation related to a municipal policy or custom."), but Plaintiff's allegations of municipal policy or custom are conclusory and insufficient to establish a viable claim under *Monell*. (*See* Dkt. 90 at 90 "Plaintiff demands judgment in the amount of One Million Dollars . . . from the City of Buffalo, for the Police Department's failure to properly train defendants[ ] Michael J. Acquino and Mark Hamilton . . . ."). Plaintiff did not respond to the City Defendants' motion for summary judgment, and therefore failed to submit any evidence of a municipal policy or custom, much less allege the existence of a municipal policy or custom. As such, with no genuine issue of material fact, the Court finds that summary judgment is warranted dismissing Plaintiff's *Monell* claim against the City of Buffalo. *See Selvaggio v. Patterson*, 93 F. Supp. 3d 54, 78 (E.D.N.Y. 2015) (conclusory allegations of a municipal policy or custom "cannot even survive a motion to dismiss, let alone summary judgment").

- 15 -

## V.     CONCLUSION

For the foregoing reasons, the City Defendants' motion for summary judgment (Dkt. 126) is granted.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  August 2, 2021
           Rochester, New York